IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 25, 2026 Session

## IN RE KADENCE B.

**Appeal from the Chancery Court for Cheatham County**
**No. 19204     Suzanne Lockert-Mash, Judge**

_____

## No. M2025-00762-COA-R3-PT

_____

This is a termination of parental rights appeal. The trial court found that four statutory grounds existed to terminate Mother's parental rights to the minor child: abandonment, persistence of conditions, failure to manifest an ability and willingness to assume custody, and severe child abuse. The trial court further concluded that termination was in the child's best interests.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

VALERIE L. SMITH, J., delivered the opinion of the court, in which CARMA DENNIS MCGEE and STEVEN W. MARONEY, JJ., joined.

Sunny Stevens, Ashland City, Tennessee, for the appellant, Brandy B-K.[1]

Wende Jane Rutherford, Nashville, Tennessee, for the appellees, Angela D. and James D.

## MEMORANDUM OPINION[2]

---

[1] In cases involving the potential termination of parental rights, it is the policy of this Court to abbreviate the full names of the children and other parties to protect their identities.

[2] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. BACKGROUND AND PROCEDURAL HISTORY

Kadence M. was born to Brandy B-K. ("Mother") in October 2022, in Davidson County, Tennessee. Kadence tested positive for methamphetamine at birth, and, with Mother's agreement, the Department of Children's Services ("DCS") removed Kadence to the care of Angela D. and James D. ("Petitioners" or "Appellees") shortly after her birth. When Kadence was born, Mother was married to Clarence M., and he was listed as Kadence's father on her birth certificate. However, Mother lived with Gary P. before and during her pregnancy and at the time of Kadence's birth; Mr. M. was incarcerated in another state.

Following a hearing on January 17, 2023, by order entered January 25, 2023, the Cheatham County Juvenile Court ("the juvenile court") found that Kadence was a victim of "severe child abuse, abuse, and dependency and neglect" and adjudicated her dependent and neglected under Tennessee Code Annotated section 37-1-102. The court ordered that Kadence would "remain in her current placement" with Petitioners and granted them the authority to consent to any necessary care. Mother pled "no contest" to DCS's allegations but made no admission of fact. Following a hearing on March 21, on March 29, 2023, the trial court entered an order requiring Mr. P. to undergo DNA testing to establish parentage before being permitted to participate further or visit Kadence. The court also ordered that Kadence would remain in Petitioners' care. Mother and Mr. P. failed to attend a subsequent hearing on May 23. In its July 27, 2023 order following the hearing, the trial court noted that the guardian ad litem had moved to suspend Mother's visitation because Mother "ha[d] been exhibiting extreme behaviors during the visitation like chewing on gravel from the driveway." The trial court granted the motion and ordered that Mother would have no visitation "until such time as she avails herself to the [c]ourt and shows significant progress with services." Following a hearing on July 25, 2023, by order entered August 7, 2023, and by agreement of the parties, Petitioners were awarded custody of Kadence and Mother was awarded visitation every other Sunday. Mr. P. did not comply with the juvenile court's order to obtain DNA testing and was not granted visitation. DCS was permitted to terminate services and to close its case.

On September 7, 2023, Petitioners filed a petition in the Chancery Court for Cheatham County ("the trial court") for termination of the parental rights of Mother, Mr. M., and Mr. P., and for adoption of Kadence.[3] In June 2024, DNA testing established that Mr. P. is Kadence's biological father ("Father"). Following a hearing on December 5, 2024, the trial court determined that clear and convincing evidence supported termination

---

[3] In January 2025, Mr. M. was disestablished as the presumed legal father after DNA testing established that he is not Kadence's biological father. He is not a party to this appeal.

of Mother's parental rights on the grounds of abandonment for failure to support; persistence of conditions; severe child abuse; and lack of ability and willingness to assume custody. The trial court also determined that clear and convincing evidence supported termination of Father's parental rights on the grounds of abandonment for failure to support; abandonment for failure to visit; persistence of conditions; and lack of ability and willingness to assume custody. The trial court further found that, based on clear and convincing evidence, termination of Mother and Father's parental rights is in Kadence's best interests. The trial court entered final judgment on April 28, 2025, and Mother filed a timely notice of appeal.[4]

## II. ISSUES PRESENTED

Mother raises two issues for our review:

1. Whether the trial court erred in finding by clear and convincing evidence that statutory grounds existed for termination of Appellant's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g).

2. Whether the trial court erred in finding by clear and convincing evidence that termination of Appellant's parental rights was in the best interest of the child pursuant to Tenn. Code Ann. § 36-1-113(i).

## III. STANDARD OF REVIEW

"Parents have a fundamental constitutional interest in the care and custody of their children," which is guaranteed under both the United States and Tennessee constitutions. *In re Connor B*., 603 S.W.3d 733, 788 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). This right is not absolute, however, and may be terminated if a court finds that one of the statutory grounds for termination exists and that termination is in the child's best interest. *See* Tenn. Code § 36-1-113(c); *Santosky v. Kramer*, 455 U.S. 745 (1982); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). Statutory grounds for termination as well as a determination that termination is in the child's best interest must all be found by clear and convincing evidence, which "serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Clear and convincing evidence "'establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (alteration in original) (quoting *In re M.J.B.*,

---

[4] Father did not participate in this appeal.

140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In cases involving the termination of parental rights, the standard of appellate review differs slightly from general appellate review under Rule 13 of the Tennessee Rules of Appellate Procedure. The Tennessee Supreme Court has explained this heightened form of review as follows:

> To review trial court decisions, appellate courts use a . . . two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings de novo under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); *In re Justice A.F.*, [No. W2011-02520-COA-R3-PT,] 2012 WL 4340709, at *7 [(Tenn. Ct. App. Sept. 24, 2012)]. When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Justice A.F.*, 2012 WL 4340709, at *7 (citing *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005)).
>
> Second, appellate courts determine whether the combination of all the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at *7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d [240,] 246 [Tenn. 2010].

*In re Markus E.*, 671 S.W.3d 437, 457 (Tenn. 2023). Those seeking to terminate parental rights must prove the elements of their case by clear and convincing evidence, which includes the statutory grounds and the best interest of the child factors. *In re Carrington H.*, 483 S.W.3d 507, 523 (Tenn. 2016). Because of the nature of the consequences, proceedings to terminate parental rights require an individualized determination. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

## IV. STATUTORY GROUNDS

### A. Abandonment under Tennessee Code Annotated section 36-1-113(g)(1).[5]

Under section 36-1-113(g)(1), parental rights may be terminated on the ground of abandonment for failure to visit or failure to support as defined in section 36-1-102. In her appellate brief, Mother asserts the trial court erred in terminating her parental rights on the grounds of abandonment because Petitioners did not demonstrate that her failure to support or visit was willful.

Section 36-1-102 provides, in relevant part:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

. . .

(*b*) If the child is less than four (4) years of age, for a period of three (3) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or amended or supplemental petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i)(b). The section further provides:

(D) For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, for the applicable time period, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant time period;

(E) For purposes of this subdivision (1), "failed to visit" means the failure, for the applicable time period, to visit or engage in more than token visitation.

---

[5] We apply the statutory provisions in effect at the time the petition to terminate parental rights was filed. Accordingly, we refer to the statutes in effect on September 7, 2023, in this case.

That the parent had only the means or ability to make very occasional visits
is not a defense to failure to visit if no visits were made during the relevant
time period[.]

Tenn. Code Ann. § 36-1-102(1)(D),(E).

The record supports the trial court's finding that Mother did not provide any financial support for Kadence. Indeed, Mother acknowledged that she paid no support.[6] Thus, we turn to Mother's argument that the trial court erred in its finding of abandonment because her failure to support was not willful.

Section 36-1-102(1)(I) provides:

(I) For purposes of this subdivision (1), it shall be a defense to abandonment
for failure to visit or failure to support that a parent or guardian's failure to
visit or support was not willful. The parent or guardian shall bear the burden
of proof that the failure to visit or support was not willful. Such defense must
be established by a preponderance of evidence. The absence of willfulness is
an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil
Procedure[.]

In her brief, Mother points us to nothing that would indicate that she pled absence of willfulness as a defense or that the issue was tried by consent at trial. Upon review of the record, we observe that on October 13, 2023, Mother filed a handwritten response to Appellees' petition to terminate her parental rights and, by order entered December 27, 2023, the trial court appointed legal counsel to represent Mother. Despite being represented by counsel, Mother failed to amend her answer to assert lack of willfulness as an affirmative defense. Additionally, although this Court may find that matter was "tried by implied consent when the trial court analyzed the issue based on extensive testimony of the parties[,]" *In re Jaxen F.*, No. E2025-00018-COA-R3-PT, 2025 WL 2366458, at *6 (Tenn. Ct. App. Aug. 14, 2025), *appeal denied* (Nov. 6, 2025), such was not the case here. Therefore, this defense is waived. See *id.* We accordingly affirm the trial court's finding of abandonment for failure to support.[7]

---

[6] Although Mother asserts that she brought food or clothing when she visited Kadence, it is not disputed that Mother had not seen Kadence in more than a year.

[7] We observe that the trial court found that neither Mother nor Father had "seen the child in over a year" in its best interest analysis. Additionally, Mother acknowledged at trial that she had not visited Kadence in more than a year. However, in its final judgment the trial court did not explicitly find grounds to terminate Mother's parental rights on the ground of abandonment for failure to visit.

**B. Substantial Noncompliance under Tennessee Code Annotated section 36-1-113(g)(2)**

In her brief, Mother argues that the record does not support termination of her parental rights on the ground of substantial noncompliance with a permanency plan. The trial court did not terminate Mother's parental rights on this ground, and that issue has not been raised on appeal by Appellees.

**C. Persistence of Conditions under Tennessee Code Annotated section 36-1-113(g)(3)**

Under section 36-1-113(g)(3), parental rights may be terminated on the ground of persistence of conditions when:

(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a child is alleged to be a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home;

(B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard[.]

As noted, DCS removed Kadence from Mother's care at birth because she tested positive for methamphetamines, and, in its January 2023 order, the trial court ordered that Kadence would remain in Petitioners' physical care and granted them decision-making authority.[8] Mother argues that the trial court erred by terminating her parental rights on

_____

[8] In their petition to terminate parental rights, Petitioners asserted:

the ground of persistence of conditions because she "made real, observable progress" and "demonstrated a positive trajectory." Other than arguing that she had taken steps to address her mental health, however, Mother pointed to no evidence to suggest that the conditions leading to the removal of Kadence from her care – her use of methamphetamines – no longer persisted.[9] Additionally, because Kadence has lived continually with Petitioners since birth, and Petitioners wish to adopt her, we agree with the trial court that continuing Mother's parental relationship diminishes Kadence's chances of an early integration in a safe, stable, and permanent home.

Additionally, the trial court found that Mother admitted that she and Father "had been involved in domestic disputes on several occasions and the police had become involved." The trial court found that Mother was "evasive" regarding her use of methamphetamines and was not in treatment for "any mental disability[.]" The trial court further found that Mother's "behavior on the witness stand was erratic" and "she appeared confused at times." Upon review of the record, we agree.

We further note that Mother acknowledged at trial that Kadence is her eighth child and that her parental rights had been terminated to six of her elder children. Like Kadence, two of Mother's elder children (twins) were removed from her care at birth. Additionally, Mother's unwillingness to consistently take medication to address her mental health has been an on-going impediment to her ability to care for her children. *See In re Autumn K., et al.*, No. M2009-01579-COA-R3-PT, 2010 WL 702307, at *9 (Tenn. Ct. App. Mar. 1, 2010).[10] In light of the totality of the record, we agree that there is little likelihood that these conditions will be addressed in the near future. Discerning no error, we affirm the trial court's determination on this ground.

---

Petitioners obtained physical possession of the minor child as the result of an Immediate Protection Agreement between the Petitioners, the Respondent Mother and the State of Tennessee Department of Children's Services on October 31, 2022, due to allegations of abuse and neglect of the minor child by Respondent Mother. The Immediate Protection Agreement was ratified and made an Order of the Court by Order of the Juvenile Court of Cheatham County Tennessee on December 1, 2022.

In its January 2023 order, the juvenile court found that Mother did not refute DCS's allegations and acknowledged that Kadence with "remain in her current placement" with Petitioners.

[9] In the argument section of her brief related to "substantial noncompliance," Mother asserts that she has remained drug free. However, as noted, the trial court found that Mother was evasive regarding her drug use, and we cannot say the record preponderates against this finding.

[10] We observe that *In re Autumn K., et al.*, No. M2009-01579-COA-R3-PT, 2010 WL 702307 (Tenn. Ct. App. Mar. 1, 2010) was admitted into evidence without objection at trial as evidence of Mother's ongoing mental health difficulties. That case involves the termination of the parental rights of Mother to six of her older children.

**D. Absence of willingness and willingness to assume legal and physical custody or financial responsibility under Tennessee Code Annotated section 36-1-113(g)(14)**

As we have recently reiterated:

Parental rights may be terminated when:

A parent has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the Child and placing the Child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the Child ....

*Id.* § 36-1-113(g)(14). This ground contains two elements that must both be proven by clear and convincing evidence. The first element "places a conjunctive obligation ... on a parent to manifest both an ability and willingness to personally assume legal and physical custody or financial responsibility for the Child." *In re Neveah M.*, 614 S.W.3d 659, 677 (2020). The second prong of the examination requires a risk of substantial harm which is defined as, "a real hazard or danger that is not minor, trivial, or insignificant ... [and] ... the harm must be more than a theoretical possibility." *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001). "While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not." *Id.*

*In re Jaxen F.*, 2025 WL 2366458, at *10.

In her brief, Mother makes no argument with respect to the trial court's termination of her rights under section 36-1-113(g)(14). In its final judgment, the trial court found that Mother had neither financially supported nor visited Kadence in more than a year. Mother testified that she did not work but hoped to receive disability payments. Mother further acknowledged domestic unrest between herself and Father, including multiple incidents necessitating the involvement of law enforcement. Upon review of the record, it is clear that Mother has a long history of mental health concerns that have not been addressed. We agree with the trial court that Mother is unable to assume custody or financial responsibility and that placing Kadence in her care more likely than not would result in substantial harm to the child.

**E. Severe Child Abuse under Tennessee Code Annotated section 36-1-113(g)(4)**

Tennessee Code Annotated section 36-1-113(g)(4) provides that parental rights may be terminated if:

The parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]

Additionally, as this Court has noted, "'[o]nce there has been a finding of severe child abuse in a final order, the doctrine of res judicata prevents parents from re-litigating the issue of whether they committed severe child abuse in a subsequent proceeding to terminate their parental rights.'" *In re Shyanne H.,* No. M2019-02127-COA-R3-PT, 2020 WL 3481695, at *6 (Tenn. Ct. App. June 25, 2020) (quoting *In re C.D.*, No. M2016-00275-COA-R3-PT, 2016 WL 4548042, at *5 (Tenn. Ct. App. Aug. 30, 2016)).

The applicable version of Tennessee Code Annotated section 37-1-102 defines severe child abuse to mean, in relevant part:

Knowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child[.]

Tenn. Code Ann. § 37-1-102(27)(E). In her brief, Mother makes no argument regarding the trial court's finding of severe child abuse. As the trial court found, it is undisputed that Kadence tested positive for methamphetamines at birth, and the Cheatham County Juvenile Court found that Kadence was the victim of severe child abuse due to Mother's drug abuse and dependent and neglected in its January 25, 2023, order. Upon our independent review of the record, we affirm the trial court's findings as to this ground and turn to the trial court's determination that termination of Mother's parental rights is in Kadence's best interests.

## V. BEST INTERESTS OF THE CHILD

If the trial court finds that a ground exists for termination of parental rights by clear and convincing evidence, the court must then determine whether clear and convincing evidence establishes that termination of parental rights is in the child's best interests. *In re Carrington H.*, 483 S.W.3d 507, 523 (Tenn. 2016) (citations omitted). Tennessee Code Annotated section 36-1-113(i)(1)(A)-(T) provides a non-exclusive list of factors to be considered by the trial court, and the court may consider "proof of other relevant factors." *Id*. (Citation omitted). "All factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order." Tenn. Code Ann. § 36-1-113(i)(3).

Whether the termination of parental rights is in the child's best interest must be "viewed from the child's, rather than the parent's, perspective." *In re Gabriella D.*, 531 S.W.3d 662, 681(Tenn. 2017) (quoting *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). The "'focus on the perspective of the child is the common theme' evident in all of the statutory factors." *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (quoting *In re Audrey S.*, 182 S.W.3d at 878). "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child[.]" Tenn. Code Ann. § 36-1-101(d). This Court has long emphasized:

> Ascertaining a child's best interests ... does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s [ ] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*In re Arianna B.,* No. M2021-00980-COA-R3-PT, 2022 WL 1486190, at *7 (Tenn. Ct. App. May 11, 2022) (quoting *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 1994)). Many of the statutory factors overlap, and this Court has observed that they "generally fall into three categories: (1) those related to the child's emotional needs; (2) those related to the child's general needs, physical environment, and wellbeing; and (3) those related to [the parent's] efforts." *In re Bravon K.*, No. M2024-01029-COA-R3-PT, 2026 WL 1584624, at *9 (Tenn. Ct. App. June 3, 2026).

The relevant version of Tennessee Code Annotated section 36-1-113 provides:

(i)(1) In determining whether termination of parental or guardianship rights is in the best interest of the child, the court shall consider all relevant and child-centered factors applicable to the particular case before the court. Those factors may include, but are not limited to, the following:

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

(2) When considering the factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.

(3) All factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order.

Tenn. Code Ann. § 36-1-113(i)(1)-(3).

In this case, the trial court made specific findings regarding the relevant statutory factors and concluded that termination of Mother's parental rights is in Kadence's best interest. We turn first to the factors related to Mother's efforts. *See id*. § 36-1-113(i)(1) (J) (regarding the parent's adjustment of circumstances); (K) (regarding the parent's efforts to take advantage of services); (Q) (regarding the parent's commitment to maintaining a home to meet child's needs); (S) (regarding financial support). The trial court found that Mother had neither financially supported nor regularly visited Kadence (who was just over two years old at the time of trial) and had not seen her in more than a year. The trial court noted that Mother had failed to resolve her drug issues or to seek consistent mental health

treatment despite having her parental rights to her older children terminated, and found that there was "no indication that [Mother] is no longer living in an abusive relationship[.]" The court found that Mother had not demonstrated an understanding of the basic needs required for a child to thrive; had not created and maintained a safe, suitable home; and was mentally and emotionally unable to care for the child.[11]

We turn next to the factors regarding Kadence's physical needs, environment, and well-being. *See id.* § 36-1-113(i)(1)(A) (regarding the child's need for stability); (J) (regarding circumstances or conduct that may render parent unable to care for child); (O) (regarding whether parent can provide safe and stable care); (P) & (Q) (regarding whether

---

[11] In its April 28, 2025, order, the trial court stated:

This Court's determination of the child's best interest included, but was not limited to, the statutory factors found at Tennessee Code Annotated §36-1-113(i).

(A) & (B) Both Respondents have failed to maintain regular visitation or contact with the child since birth and have not seen the child in over a year. They have failed to provide support for the child. The child has been in a continuous and stable environment since birth and to remove her and place her back with the parents would be traumatic to her emotional, psychological condition;

(D) There is no evidence of a secure and healthy parental attachment and no reasonable expectation that such an attachment can be created;

(H) The child knows the [Petitioners] as her parents and has a healthy parental attachment to them;

(J)(K) No indication that [Mother] is no longer living in an abusive relationship nor seeking treatment for mental health or drug issues;

(O) Of the eight children of [Mother], seven have been removed for dependent/neglect issues;

(P) The parents have not demonstrated an understanding of the basic and specific need required for the child to thrive;

(Q) The parents have not demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R)With the evidence of drug use and domestic violence, the physical environment of the parents' home is not healthy and safe for the child;

(S) The parents have failed to provide financial support for the child;

(T) The mental and emotional fitness of the parents is such that returning the child to them would be detrimental to the safety of the child.

parent has demonstrated understanding of basic needs and ability to meet them); (R) (whether parent's home is safe and healthy); (T) (regarding parent's emotional or mental fitness to provide safe care). In this case it is undisputed that Kadence was removed from Mother's care at birth after testing positive for methamphetamines. The trial court found that Kadence had been in a continuous and stable environment since birth and that "[w]ith the evidence of drug use and domestic violence, the physical environment of the parents' home is not healthy and safe for the child." The trial court also noted that Mother's older children had been removed from her care as a result of neglect and determined that returning Kadence to her Mother would be detrimental to her safety. The trial court found that Mother had not demonstrated an understanding of Kadence's basic needs or the ability to make a home in which Kadence could thrive.

We turn finally to the statutory factors related to the child's emotional needs and well-being. *See id.* § 36-1-113(i)(1)(A) (regarding the child's need for stability); (B) (regarding the effect of a change of caretakers and environment); (D) (regarding the parent-child relationship); (H) (child's emotional attachment to and relationship with another person(s)). With regard to Kadence's emotional needs and well-being, the trial court found that removing Kadence to Mother's care from the home she had known since birth "would be traumatic to her emotional, psychological condition." It is undisputed that Kadence was removed from Mother's care at birth and Mother had not seen her in more than a year. The court found that Kadence did not have an attachment to Mother and there was no reasonable expectation that an attachment could be created. The court also found that Kadence knew Petitioners as her parents and had formed a healthy parental attachment to them.

From our review of the record, we find no evidence to preponderate against the factual findings of the trial court. Upon our own consideration of the relevant factors and the combined weight of these factors, we affirm the trial court's determination that clear and convincing evidence supports a conclusion that termination of Mother's parental rights is in Kadence's best interests.

## VI. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment terminating Mother's parental rights to Kadence, a minor child. The case is remanded to the trial court for further proceedings as may be necessary and as are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Brandy B-K. Because Brandy B-K. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

s/Valerie L. Smith
VALERIE L. SMITH, JUDGE

- 15 -